IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

ROBERT A. CHESTER,

       Plaintiff,

v.                                      Case No. 2:22-cv-00289

BETSY JIVIDEN, *et al.*,

       Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court is a Motion to Dismiss filed by Defendants Betsy Jividen and Donald Ames [ECF No. 3].[1]  By Standing Order, this matter is referred to the Honorable Dwane L. Tinsley, United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).  For reasons appearing to the Court, it is hereby **ORDERED** that the referral of this motion to the Magistrate Judge is **WITHDRAWN**.  However, the matter shall otherwise remain referred to Magistrate Judge Tinsley.  For the reasons stated herein, it is hereby **ORDERED** that Defendants' motion to dismiss [ECF No. 3] is **GRANTED**.

---

[1] The Motions to Dismiss filed by Defendants Jonathan Frame, Ashley Hollingsworth, Jarred Wilson, and Jonathan Ward [ECF Nos. 5 and 27] will be addressed by separate Memorandum Opinion and Order. Defendants James Crocker, Michael Dempsey, and Marshall Tincher filed an Answer to the Complaint [ECF No. 26] and the claims against them warrant further development through discovery.  Defendant Brian Penick has not been successfully served with process and has not made an appearance herein.

I.      **The Plaintiff's Allegations and the Defendants' Motions to Dismiss**

This matter was removed from the Circuit Court of Kanawha County on July 14, 2022.  [ECF No. 1].  According to the complaint, on March 9, 2021, Plaintiff was moved from general population to segregation at the Mount Olive Correctional Complex ("MOCC") after a substance alleged by an investigator[2] to be "fentanyl" was found in his cell.  [ECF No. 1, Attach. 2 (hereinafter ECF No. 1-2) at 10].  Plaintiff claimed that the substance was "flour" and refused to disclose where he obtained it.  [*Id.*]  Plaintiff alleges that, when he was removed from general population, he was taken to the medical unit and, while handcuffed and shackled, was "slammed, kicked in my face, spit on, and verbally assaulted" by Defendants Crocker, Dempsey, and Tincher.  [*Id.*]

Plaintiff further claims that this incident was reported to the shift commander, Brian Penick, as well as Associate Wardens Jonathan Frame and Jonathan Ward, and Plaintiff alleges that he was ultimately wrongfully charged with a disciplinary rule violation for assault stemming from this incident.  [*Id.*]  Plaintiff further alleges that the institutional magistrate, Jarred Wilson, found him guilty of the "fictitious assault" and placed him in segregation for two months.  [*Id.*]  That decision was upheld on appeal by Warden Donald Ames and Commissioner Betsy Jividen.  [*Id.*]  Plaintiff further summarily alleges that Defendant Jividen "knows this happens all the time" but, nonetheless, denied both Plaintiff's grievances and his disciplinary appeal.  [*Id.*]

---

[2]  Although not specified in the complaint, it appears that Defendant Ashley Hollingsworth was the investigator involved.

Although Plaintiff fails to identify any specific legal bases for his claims, a liberal construction of the complaint suggests that he is alleging an Eighth Amendment excessive force claim against Defendants Crocker, Dempsey, and Tincher that will be further developed in additional proceedings. The claims against the remaining defendants appear to be based upon the alleged filing of false disciplinary charges against Plaintiff and supervisory liability.

Defendants' motion documents assert that, in their official capacities, they are not "persons" who can be sued under 42 U.S.C. § 1983 and are further entitled to sovereign immunity under the Eleventh Amendment. [ECF No. 4 at 5]. Additionally, Defendants contend that the complaint fails to state any plausible claim upon which relief can be granted against them in their individual capacities and that they are entitled to qualified immunity. [*Id.* at 6-10].

On August 18, 2022, Plaintiff responded to the motion to dismiss filed by Defendants Jividen and Ames. [ECF No. 8]. Those Defendants then filed a reply brief on August 25, 2022. [ECF No. 10]. However, on September 2, 2022, Plaintiff filed an additional brief concerning the claims against these Defendants, which the Court has construed and authorized as a sur-reply. [ECF No. 14]. Defendants were further granted leave to respond to the sur-reply. [ECF No. 20]. Defendants' motion is fully briefed and ripe for adjudication.

## II. Standard of Review

Defendants' motion is filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A motion filed under Rule 12(b)(6) tests the legal sufficiency of a

complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  When "faced with a Rule 12(b)(6) motion to dismiss . . . courts must . . . accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  To achieve facial plausibility, the plaintiff must plead facts allowing the court to draw the reasonable inference that the defendant is liable, moving the claim beyond the realm of mere possibility. *Id.* Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

Additionally, "[t]he Fourth Circuit has not resolved whether a motion to dismiss based on the Eleventh Amendment is properly considered pursuant to Rule 12(b)(1) or 12(b)(6), [of the Federal Rules of Civil Procedure], but the recent trend appears to treat Eleventh Amendment immunity motions under Rule 12(b)(1)." *Jeffers v. W. Va. Div. of Corr. & Rehab.*, No. 3:19-cv-0462, 2020 WL 521851, at *3 (S.D. W. Va. Jan. 31, 2020), citing *Chafin v. W. Reg'l Jail*, No. 3:13-cv-01706, 2013

WL 3716673, at *3 (S.D. W. Va. July 12, 2013) (internal quotation marks and citations omitted). Thus, although not specifically pled by Defendants, the court will address their argument for dismissal of the official capacity claims under Rule 12(b)(1) as well.

## III.   Discussion

### A.   Official Capacity Claims and Sovereign Immunity

Plaintiff's complaint does not specify whether he is suing Defendants Jividen and Ames in either their official or individual capacities, or both. However, to the extent that Plaintiff is suing these Defendants in their official capacities, they are immune from suit. An individual who is employed by an arm of the State and sued in his official capacity is immune from suit in federal court under the Eleventh Amendment. *Fauconier v. Clarke*, No. 18-6489, 2020 WL 4046025, *8-9 (4th Cir. Jul. 20, 2020); *Lawson v. Union Cty. Clerk of Court*, 828 F.3d 239, 250 (4th Cir. 2016), *as amended* (July 8, 2016). The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Such immunity protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." *Id.*; *see also Hans v. Louisiana*, 134 U.S. 1, 9 (1980).

Thus, the Eleventh Amendment of the United States Constitution bars a suit in a federal court by private parties, such as Plaintiff, seeking to impose monetary

liability upon a state or state officials, which may be paid from public funds in the state treasury. *Quern v. Jordan*, 440 U.S. 332, 337 (1979). Absent consent, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99-100 (1984).

Furthermore, in *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court held that a state, its agencies, and its officials acting in their official capacity, are not "persons" under 42 U.S.C. § 1983. The vehicle for asserting Plaintiff's claims in federal court is § 1983. Thus, all Defendants, in their official capacities, are not persons who can be sued thereunder. Accordingly, I **FIND** that dismissal of all claims against Defendants Jividen and Ames in their official capacities is warranted.

### B.   Individual Capacity Claims and Qualified Immunity

Defendants Jividen and Ames' motion to dismiss also asserts that Plaintiff has failed to state any plausible claim for relief against them in their individual capacities. First, they assert that "specific acts or omissions by each defendant which violated Plaintiff's constitutional rights must be alleged" and Plaintiff has not alleged any specific facts concerning their conduct in the complaint. (ECF No. 4 at 6-7, 10). Extending their argument concerning claims against them in their official capacities, Defendants' memorandum of law asserts:

> There is no factual allegation in the Complaint that Betsy Jividen did or did not do something or was required to act, based upon anything other than the fact that she is the Commissioner of the WVDCR. . . . The same holds true for Donald Ames as Superintendent of MOCC. There are no

6

allegations against him individually, nor are there any direct claims for liability against him. Because Plaintiff's claims against Jividen and Ames arise from their respective roles in the Administration of the WVDCR, these claims are official capacity claims, and, as such, they should be dismissed.

[ECF No. 4 at 6].

Defendants Jividen and Ames further presume that, if Plaintiff is alleging any potential individual claim against them, it is an Eighth Amendment claim grounded in "deliberate indifference" to his safety. To sustain such a claim, a prisoner must establish: (1) a deprivation that is "objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) that the prison official had a "sufficiently culpable state of mind;'" that is, a "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In *Farmer*, the Supreme Court established that prison officials may be liable under the Eighth Amendment for denying humane conditions of confinement only if the official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." 511 U.S. at 847.

As asserted by Defendants, in a § 1983 action, a supervisor, such as Jividen or Ames, may not be held liable under a theory of *respondeat superior*. [ECF No. 4 at 7-8]. Rather, Plaintiff must show that the Defendant subjectively "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." 511 U.S. at 837. "Deliberate indifference" requires actual, subjective consciousness of a risk. *Id.* at

840. "For liability to attach, it is not enough to allege that conditions or circumstances 'should have been' known to a particular prison official, but, rather, evidence must be offered of the official's actual state of mind, specifically that the official was personally aware of a substantial risk of serious harm to an inmate." [ECF No. 4 at 7] (citing *Farmer*, 511 U.S. at 835-47). Defendants' brief further asserts:

> [Plaintiff] has failed to demonstrate facts to support that either Jividen or Ames had any personal knowledge of the events described in his Complaint whatsoever (until, at best, after the events took place). Further, Plaintiff fails to assert facts supporting a claim that he was deprived of any of the humane conditions to which he is entitled under the Eighth Amendment. As Plaintiff's Complaint fails to state a plausible claim under the Eighth Amendment against Jividen or Ames, his claims fail as a matter of law, and these Defendants are entitled to dismissal.

[*Id.* at 8]. Defendants' motion to dismiss further asserts that these Defendants are entitled to qualified immunity on Plaintiff's claims against them. [*Id.* at 8-10].

Plaintiff's initial response to Jividen and Ames' motion to dismiss asserts that Jividen and Ames were "more than two times made aware of the assault" and failed to do anything about it. [ECF No. 8 at 1]. He appears to contend that Jividen and Ames would have been made aware of the details of the assault through the detention or incident report on March 9, 2021, and also the appeals following his being found guilty of the assault violation, as well as through Grievance No. 21-MOCC-Q2-275, dated March 10, 2021. [*Id.*] Plaintiff's response further asserts that, despite knowing about the physical and mental abuse he had suffered, Jividen and Ames refused to help him, further contributing to his injury. [*Id.* at 1-2]. Plaintiff further argues that this conduct violated Jividen and Ames' duties under <u>state</u> law. [*Id.* at 2].

8

Defendants' reply asserts:

> Plaintiff makes no allegations against Defendants Jividen or Ames asserting they were directly involved in the alleged tortious conduct. The lack of any specific factual allegations against Defendants Jividen or Ames suggests they were named in the Complaint in their official capacities. In his Response, Plaintiff argues that Defendants Jividen and Ames denied his grievance and refused to provide him with relief. Plaintiff's Response cites to West Virginia law regarding powers of the WVDCR Commissioner. Plaintiff's Response does nothing to remedy the reality that he has failed to state a claim against these Defendants . . .

[ECF No. 10 at 2]. Their reply emphasizes that Plaintiff's response alleges only that Jividen and Ames were aware of the alleged assault through the grievance and disciplinary appeal processes, all of which occurred <u>after</u> the assault allegedly occurred. [*Id.* at 4]. They further contend:

> Even accepting as true that Defendants Jividen and Ames were made aware of the alleged assault following its occurrence, Plaintiff has not pleaded any theory of liability to support a claim against these Defendants. Plaintiff has not pleaded how these Defendants' after-acquired knowledge caused or contributed to the alleged assault. Plaintiff has not pleaded how these Defendants' after-acquired knowledge caused Plaintiff any damages.

[*Id.*]

Plaintiff's sur-reply again asserts that "[o]n several separate occasions both Defendants Jividen and Ames were factually made aware of the abuses and assaults being executed upon the Plaintiff, by and at the direction of officers and/or staff operating under the direction and/or authority of these defendants, while the Plaintiff was [] at all times under the direct care, custody, control and authority of the abusers as well as these defendants." [ECF No. 14 at 2]. Plaintiff emphasizes that Jividen and Ames were clearly made aware of the details of the alleged assault and abuse

through the grievance process and "ignored the actions of abuse and assault by those operating under their authority and took no action to correct." [*Id.* at 2-3]. Thus, he claims that they "tacitly authorized" their subordinates' actions. [*Id.* at 3]. He again asserts that Jividen and Ames did not act in accordance with their state law duties. [*Id.* at 3-6].

Defendants' response to Plaintiff's sur-reply argues that "[d]enial of grievances is insufficient to form a basis for liability" and Plaintiff's allegations of after-acquired knowledge are inadequate to give rise to any Eighth Amendment liability for his alleged physical assault and mental anguish related thereto. [ECF No. 20 at 2-4]. They further assert that Plaintiff has no constitutional right to a specific outcome to the grievance process and that denial of an inmate grievance is within their discretion. [*Id.* at 4-5]. Defendants re-assert that, because Plaintiff has not sufficiently alleged any plausible violation of a clearly established federal constitutional right against them, they are entitled to qualified immunity. [*Id.* at 3-4].

The Court construes the claims against Jividen and Ames to be claims of supervisory liability. While the Fourth Circuit has firmly held that "supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates," *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984), the burden of proof on such a claim is weighty. *Iqbal*, 556 U.S. at 677; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). "Liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's

rights,' or where a subordinate acts pursuant to a policy or custom for which the supervisor is responsible." *Id.* (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)).

> There are three elements necessary to establish supervisory liability:
>
> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Id.* at 799.  To establish the first element, Plaintiff must show "(1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." *Id.* "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.*

Turning to the second element, Plaintiff "may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" *Id.* (citations omitted).  The Fourth Circuit has held:

> The plaintiff assumes a heavy burden of proof in establishing deliberate indifference because: [o]rdinarily, [the plaintiff] cannot satisfy his burden of proof by pointing to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities.  Nor can he reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has

no basis upon which to anticipate the misconduct. A supervisor's continued inaction in the face of documented widespread abuses, however, provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates.

*Id.* (citations omitted).

The third element for supervisory liability is established "when the plaintiff demonstrates an 'affirmative causal link' between the supervisor's inaction and the harm suffered by the plaintiff." *Id.* (citations omitted). Causation in this context encompasses both cause in fact and proximate cause. *Id.* The Fourth Circuit has held that the "proof of causation may be direct . . . where the policy commands the injury of which the plaintiff complains . . . [or] may be supplied by [the] tort principle that holds a person liable for the natural consequences of his actions." *Id.* (citations omitted).

The complaint herein fails to sufficiently allege the essential elements necessary to hold Defendants Jividen and Ames liable under a supervisory liability theory. Plaintiff has not adequately alleged that either Jividen or Ames were actually aware of a pervasive risk of harm before Plaintiff's assault and that their failure to act proximately caused his assault. His singular assertion that "Jividen knows this happens all the time" is simply too threadbare and conclusory to satisfy the *Iqbal* standard. Likewise, the complaint does not allege any factual allegations whatsoever against Ames. However, even presuming that Ames was also involved in the denial of Plaintiff's grievance and his disciplinary appeal process, Plaintiff has failed to sufficiently establish that his role in those actions amounted to deliberate

indifference to a substantial risk of harm to Plaintiff. Accordingly, I **FIND** that Plaintiff's complaint fails to state a plausible claim for relief against Defendants Jividen and Ames.

### C.   Qualified Immunity.

Defendants' motion also asserts that they are entitled to qualified immunity on Plaintiff's claims against them. [ECF No. 4 at 8-10]. Qualified immunity "shields government officials from liability for civil damages provided their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Haze v. Harrison*, 961 F.3d 654, 660 (4th Cir. 2020); *Meyers v. Baltimore Cty.*, 713 F.3d 723, 731 (4th Cir. 2013). The following test is used to determine whether a defendant is entitled to qualified immunity: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show the defendant's conduct violated a constitutional right; and (2) was that right clearly established such that a reasonable person would have known that their conduct was unlawful. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538–39 (4th Cir. 2017). A defendant is "entitled to a qualified immunity defense so long as 'the law did not put the [defendant] on notice that his conduct would be clearly unlawful.'" *See Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). Because Plaintiff's complaint fails to state a plausible violation of any clearly established constitutional right by these Defendants, I **FIND** that they are each entitled to qualified immunity on Plaintiff's claims against them.

IV.    Conclusion

For the reasons stated herein, I **FIND** that Plaintiff's complaint fails to state any claim upon which relief can be granted against Defendants Jividen and Ames and, thus, the claims against them are ripe for dismissal. Accordingly, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, it is hereby **ORDERED** that the Motion to Dismiss filed by Defendants Jividen and Ames [ECF No. 3] is **GRANTED.**

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER:      March 21, 2023

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

14